UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH MASSUCCO,

        Plaintiff,

  v.

GROUP HEALTH COOPERATIVE OF PUGET SOUND,

        Defendant.

CASE NO. C05-342JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff Joseph Massucco's motion to compel discovery (Dkt. # 12) and a cross-motion for a protective order from Defendant Group Health Cooperative of Puget Sound ("Group Health"). Neither party has requested oral argument, and the court finds this matter appropriate for disposition based on the parties' briefing and supporting declarations. For the reasons stated below, the court GRANTS both motions in part and DENIES both in part.

## II. BACKGROUND

This motion arises out of unusual circumstances surrounding an August 2004 meeting at which Group Health terminated Mr. Massucco's employment.[1] On August 4,

---

[1] Mr. Massucco alleges that Group Health terminated him in retaliation for his complaints about religious favoritism in the workplace and other management problems.

ORDER – 1

2004, Mr. Massucco's manager, Mitchell Turner, met with Mr. Massucco along with other Group Health supervisors and human resources personnel. He gave Mr. Massucco a letter describing several reasons for terminating him. He also gave him a memorandum dated August 9, 2002 (the "Memo"). The Memo described three incidents that were also described in the termination letter: Mr. Massucco wearing jeans in violation of Group Health dress policy, sending a hostile e-mail to Group Health security personnel, and aggressively confronting another Group Health employee while at work.

It is undisputed that Mr. Massucco was not involved in any way in the latter two incidents described in the Memo. Group Health now concedes that these incidents happened in 2001 and their perpetrator was not Mr. Massucco. Beyond this undisputed fact, much is in controversy regarding the Memo. Mr. Turner insists that he gave the Memo to Mr. Massucco in 2002 soon after drafting it; Mr. Massucco insists he never saw the Memo until the 2004 termination meeting. Mr. Massucco claims that the Memo is evidence that Group Health fabricated evidence of past incidents to justify his termination; Mr. Turner contends that he merely used a disciplinary memo for the other employee that he created in November 2001 as a first draft when creating the Memo in 2002, and inadvertently failed to delete the portions that had nothing to do with Mr. Massucco. It is clear, however, that part of Group Health's justification in August 2004 for terminating Mr. Massucco was its mistaken belief that he was the perpetrator of the 2001 incidents described in the Memo.

Mr. Massucco seeks to conduct electronic discovery to explore the issues arising from the Memo. He has engaged Paul French, the managing director of computer forensics firm NTI Breakwater, to search computers at Group Health to discover when Group Health created the Memo, who drafted it, and other information. Although Group Health concedes that some discovery on the subject would be appropriate, the parties

ORDER – 2

have been unable to resolve their disagreements over the scope of discovery and the manner of conducting it.

### III.  ANALYSIS

The court will first consider the appropriate scope of Mr. Massucco's proposed forensic inquiry. It will then discuss appropriate regulations on the manner of conducting that inquiry.

**A.     The Court Limits the Scope of the Forensic Examination.**

The parties' initial dispute is over whether to limit Mr. French's examination to determining who created the Memo and the November 2001 memo on which it was based, and when. Mr. Massucco proposes a larger scope, one that would permit Mr. French to search for evidence of all disciplinary action that Group Health imposed on him, or considered imposing.

If this were merely a matter of deciding whether the proposed discovery seeks relevant information, the court's decision would be simple. There is no question, even at Group Health, that the discovery that Mr. Massucco proposes falls within the broad standard of relevance under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1) (defining relevant discovery as "appear[ing] reasonably calculated to lead to the discovery of admissible evidence.").

The issue here, however, is the substantial additional burden that conducting electronic discovery imposes on Group Health. Unlike the traditional discovery process in which the responding party controls what it produces and what it does not, the electronic discovery that Mr. Massucco proposes requires Group Health to open its premises and its electronic systems to a third party. Group Health must monitor that third party throughout a lengthy process of "imaging" (creating mirror images of certain computer storage devices) and searching Group Health's computer network, and must bear the risk of any inadvertent damage or disruption to its systems. It must also face the

ORDER – 3

prospect that the third party will inadvertently view irrelevant confidential information (patient data, for example). Although courts' oversight of the discovery process has begun to evolve to reflect advances in data storage technology, no court has suggested that it is appropriate to grant carte blanche to engage in such invasive electronic discovery methods. See generally Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003); Toshiba Amer. Elec. Components, Inc. v. Superior Court of Santa Clara Cty., 21 Cal. Rptr. 3d 532 (Cal. Ct. App. 2004). Indeed, where courts have granted leave to conduct discovery in the manner Mr. Massucco proposes, it has been in cases where the responding party has consented, or the responding party refused to search for documents available only on electronic archives, or the requested discovery can be obtained only through these more invasive methods. E.g., OpenTV v. Liberate Techs., 219 F.R.D. 474, 475 (N.D. Cal. 2003) (consent of party); Zubulake, 217 F.R.D. at 313 (responding party refused to pay to restore and search electronic backup tapes); Xpedior Credit Trust v. Credit Suisse First Boston (USA), Inc., 309 F. Supp. 2d 459, 466 (S.D.N.Y. 2003) (responsive material available only on computer servers).

In this case, there is no indication that the more invasive discovery that Mr. Massucco proposes is necessary to discover documents related to Group Health's proposed or actual disciplinary actions against him. Group Health claims that it has already produced or is in the process of producing such documents. Mr. Massucco does not argue that the production has been inadequate. Indeed, his principal justification for expanding the scope of electronic discovery seems to be that because his expert will be probing Group Health's computer systems already, it makes little difference to permit him to probe further. The court finds this justification insufficient, and finds no reason on the record before it to doubt the thoroughness of Group Health's own search for responsive documents.

ORDER – 4

As to discovery to determine when the Memo and the November 2001 memo were created, Group Health apparently concedes that only electronic discovery can reveal this information. It does not seek to prevent Mr. Massucco's expert from accessing its computer systems for this limited purpose. The court therefore orders that Mr. Massucco's expert may access Group Health's computer systems in the manner provided in Group Health's proposed protocol,[2] subject to modifications the court imposes later in this order. Def.'s Proposed Ord. at 4-9.

As a final remark on the scope of electronic discovery, the court notes that it has balanced the likely benefit of the information that Plaintiff seeks against the burden that the discovery will impose on Group Health. Fed. R. Civ. P. 26(b)(2)(iii). The impetus for the discovery Plaintiff requests was the Memo and the misinformation contained in it. The court has reviewed the Memo and the November 2001 memo on which it was based, and has considered the inferences that Mr. Massucco wishes the court to draw from them. The court is largely unpersuaded. Mr. Turner's relatively innocent explanation for the misinformation in the Memo is by far the most plausible explanation before the court. If Group Health had sought to manufacture evidence against Mr. Massucco, it surely would have done so more competently than by recycling another employee's transgressions and accusing Mr. Massucco of them. It is difficult to imagine a less effective means of manufacturing evidence. The Memo is, at a minimum, evidence of poor oversight of disciplinary memoranda, and gaps in the memory of Mr. Massucco's managers. The court is not convinced that it is more than that. Under these circumstances, the burden that wide-ranging electronic discovery would impose on Group Health outweighs the

---

[2] The parties exchanged several drafts of a forensic examination protocol before bringing these motions. The court commends the parties for their efforts, and notes that reviewing their respective proposed protocols has greatly simplified its task in resolving these motions.

ORDER – 5

likelihood that the discovery will yield evidence that would be significant in the resolution of this action.

**B.     The Court Places Limits on the Manner of Conducting the Forensic Examination.**

Having addressed the permissible scope of Mr. Massucco's forensic search, the court turns now to the manner of conducting that search. The court notes that the parties have reached agreement on many of these issues, and appreciates their cooperation.

The parties disagree over the proper procedure for reviewing the documents or data fragments that Mr. Massucco's expert uncovers. They agree that the expert will generate a list of documents or fragments and provide the list to Group Health so that it can review it, review the underlying documents or data, and decide which documents and data to produce. The parties disagree over whether Mr. Massucco should have access to the list. The court finds no reason that he should not, and thus orders that the expert shall provide a copy of the list to Group Health, who shall then have five days to produce the list to Mr. Massucco. If portions of the list reveal privileged information, Group Health may redact those portions and provide a privilege log explaining the basis for the redactions. Group Health may not redact portions of the list based solely on relevance objections, although it may ultimately decline to produce the underlying documents or data if they are irrelevant.

The court strikes paragraph 8 from Group Health's proposed protocol. Def.'s Proposed order at 8-9. If Group Health has questions regarding Mr. Massucco's expert's methods or conclusions, they may depose him as they would any other expert. The court encourages Mr. Massucco to resolve such questions informally, but will not require him or his expert to do so. The parties may also seek the court's intervention if disputes arise.

The court also strikes paragraph 10 from Group Health's proposed protocol. The court takes no position on who should bear the costs of this electronic discovery.

ORDER – 6

Initially, Mr. Massucco must do so, and he bears the burden of convincing the court that cost shifting would be appropriate.

### IV.  CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part these cross-motions (Dkt. # 12), and directs the parties to complete electronic discovery in accordance with this order.

DATED this 3rd day of October, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 7